IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| EBENCONCEPTS COMPANY, § § | |
| Plaintiff, § § | |
| v. § § | Civil Action No. 3:21-cv-00285-M |
| DAVID CRUMPLER and DENISE § DELAMAR a/k/a DENISE WILLIAMS § a/k/a DENISE CARGILE, § | |
| Defendants. | |

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMIMNARY INJUNCTION**

Plaintiff EbenConcepts Company ("Eben" or "Plaintiff"), files this Complaint, Request for Temporary Restraining Order and Application for Preliminary Injunction against Defendants David Crumpler ("Crumpler") and Denise Delamar a/k/a Denise Williams a/k/a Denise Cargile ("Denise") (Crumpler and Denise collectively referred to as "Defendants") (Plaintiff and Defendants referred to collectively as the "Parties"), and respectfully shows the Court as follows:

## I.
## INTRODUCTION

Eben files this suit to protect its Confidential Information[1] from being used by Crumpler and Denise as part of their brazen attempt to steal back the book of business that Crumpler sold to

---

[1] As defined in the Agreement Purchase Agreement ("2019 APA") which is the subject matter of this case. "Confidential Information" means any data or information with respect to the business conducted by EbenConcepts on the Effective Date of this Agreement, other than trade secrets, that is material to EbenConcepts and not generally known by the public. To the extent consistent with the foregoing definition, Confidential Information includes without limitation: (A) reports, pricing, sales manuals and training manuals, selling and pricing procedures, and financing methods of EbenConcepts, together with any techniques utilized by EbenConcepts in designing, developing, manufacturing, testing or marketing its products or in performing services for clients, customers and accounts of

Eben. After being paid over $200,000 and agreeing to non-solicitation, non-piracy, non-interference, and other restrictive covenants relating to the protection of Eben's trade secrets and confidential information, Crumpler is now actively contacting the customers, who he agreed not to contact, and is taking their bought and paid for business away from Eben. As part of the 2019 APA[2], Crumpler has already agreed that "**a breach or violation of any of the covenants under this Agreement will result in immediate and irreparable harm to EbenConcepts in an amount which will be impossible to ascertain at the time of the breach or violation and that the award of monetary damages will not be adequate relief. Therefore, the failure on the part of the Seller to perform all of the covenants established by this subsection shall give rise to a right of EbenConcepts to obtain enforcement of this Agreement in a court of equity by a decree of specific performance or other injunctive relief.**" [emphasis added]

In his Motion to Dismiss[3], Crumpler denies agreeing to the written 2019 APA. The Court should not be distracted by this attempt by Crumpler to distance himself from the language of the 2019 APA because even if he convinces the Court he is not bound by the 2019 APA, he would then still be bound by the Employment Agreement[4] ("EA") that he signed with Eben. As part of the EA, Crumpler agreed to restrictive covenants that last for three (3) years after he leaves his employment with Eben[5], agreed that injunctive relief is appropriate if he violates those restrictive covenants[6], and agreed that "THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL ACTIONS

---

EbenConcepts; (B) customer lists, the special requirements of particular customers, and the current and anticipated requirements of customers generally for the services of EbenConcepts; and (C) the business plans and financial statements, reports and projections of EbenConcepts.
[2] Exhibit A.
[3] Doc. No. 4.
[4] Exhibit B.
[5] Exhibit B at 3. IV Restrictive Covenants.
[6] Exhibit B at 5. 4.8 Remedies.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

HEREON SHALL BE BROUGHT IN DALLAS COUNTY, TEXAS."[7] In other words, there is no question that Crumpler entered into a contract with Eben that prevents Crumpler from doing exactly what he is doing and that this Court has jurisdiction over him.

Further, Denise also entered into an Agency Employment Agreement ("AEA") with Eben.[8] The AEA contains restrictive covenants such as:

"Agency clients remain a part of the agency's book of business following the agent's voluntary or involuntary termination of employment with the agency and shall not be considered as a potential prospect or pursued as a client, directly or indirectly, by the agent or the agent's future employers for a period of three (3) years following the agent's termination of-employment with the agency. Specifically prohibited is a direct or indirect attempt to change the agent of record agreement between the client, agency and any insurer by the agent."

Eben asks this Court to enter an order restraining Crumpler and Denise from continuing their scheme, which Crumpler has agreed in writing would cause Eben immediate and irreparable harm and would warrant the injunctive relief requested.

## II.
## PARTIES

Plaintiff EbenConcepts Company is organized and existing under the laws of the State of Texas, with its principal place of business in Dallas County, Texas, and may be served and contacted by and through its attorney, Jose Portela, Stanton LLP, 1717 Main Street, Suite 3800, Dallas, Texas, 75201.

Defendant David Crumpler is an individual who resides in North Carolina and who has appeared in this case.

Defendant Denise Delamar a/k/a Denise Williams a/k/a Denise Cargile is an individual who resides in North Carolina who may be served at 6188 Lakeway Drive, Fayetteville, North Carolina, 28306.

---

[7] Exhibit B at 5. 5.5 GOVERNING LAW.
[8] Exhibit C.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

## IV.
## JURISDICTION AND VENUE

This Court has jurisdiction over this case because the damages sought are within the jurisdictional limits of the Court. The amount in controversy exceeds $75,000, exclusive of interest and cost. Pursuant to 28 U.S.C 1332, this Court has jurisdiction over this matter.

Pursuant to the 2019 APA, Crumpler has contractually agreed that "Jurisdiction and Venue. The exclusive jurisdiction and venue for any action arising hereunder shall be a Court of the State of Texas of competent jurisdiction in Dallas, Dallas County, Texas. The terms and provisions of this Agreement shall be governed by the laws of the State of Texas." As a result, Crumpler clearly contemplated subjecting himself to Texas courts and has clearly taken advantage of Texas laws and purposely availed himself of the privilege and benefit of doing business in Texas. *See* Exhibit A.

Pursuant to the EA, Crumpler has agreed "THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL ACTIONS HEREON SHALL BE BROUGHT IN DALLAS COUNTY, TEXAS."[9] Further, even if the 2019 APA is not enforceable, then this Court has jurisdiction over this matter pursuant to 28 U.S.C 1332.

Crumpler also entered into multiple other contracts, pre-dating the 2019 APA, where he agreed that "the exclusive venue for any action arising hereunder shall be a court of competent jurisdiction in Dallas County, Texas."[10] There is no question that the negotiation of these contracts

---

[9] Exhibit B.
[10] Exhibits D-F.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

and the language contained therein regarding future consequences show that Crumpler purposefully availed himself of Texas.

Eben, the Defendants former employer, is a Texas company that is headquartered in Dallas, Texas and Defendants knowingly entered into contracts with Eben. The payments Crumpler and Denise received, pursuant to the contract, came from Dallas, Texas. Crumpler and Denise frequently communicated with Eben employees in Dallas, Texas in order to conduct business relating to the entities that are the subject matter of this case. On multiple occasions Crumpler and Denise traveled to Dallas, Texas to attend corporate business meetings at Eben's offices in Dallas, Texas. There is no question that the Defendants have conducted business in Texas and have purposely availed themselves of the benefits of the laws of the State of Texas. To be clear, not only did both Defendants contract with a Texas entity, but both Defendants are former employees of that very same Texas entity and the claims brought herein are tied directly to their employment with that Texas entity.

In light of all of these facts, Crumpler and Denise have established meaningful minimum contacts, ties, and relations with the State of Texas. Both Defendants have purposefully directed activities at, and in, the State of Texas. This litigation results from the injuries that arise out of and relate to those activities. The contracts show that the Defendants purposefully reached out to the State of Texas and created a continuing relationship and obligations to Eben, a Texas entity. Defendants course of dealing with Eben also establishes that they have had purposeful minimum contacts with the State of Texas.

## V.
## FACTS

Eben is a privately owned consulting and brokerage firm established in 1999 with its headquarters in Dallas, Texas.

On or about August 15, 2005, Eben contracted with Crumpler to buy certain assets from his business, David Crumpler & Associates, Inc. As part of that purchase, Crumpler sold his rights, title and interest in the client accounts that he maintained. Those "Assets" were listed in Exhibit A to the Asset Purchase Agreement (the "August 2005 APA"). *See* Exhibit D.

Eben purchased the "exclusive right to do business with all customers listed on Exhibit D (the "Customer List) together with all contracts, files, accounting records, business records, forecasts, projections, books of account, and all other business records (collectively, the "Business Records") relating to the Customer List, as well as all goodwill relating to the foregoing." Along with the August 2005 APA, Crumpler entered into a "NON-COMPETITION AGREEMENT" with Eben. *See* Exhibit E.

On or about September 1, 2005, Eben and Crumpler entered into a second Asset Purchase Agreement (the "September 2005 APA"). Much like the August 2005 APA, Crumpler sold a specified list of "Assets" listed in Exhibit A to that agreement, including the "Crumpler B Block" clients, and also entered into an additional "NON-COMPETITION AGREEMENT" with Eben. *See* Exhibit F. Both non-competition agreements also contain restrictive covenants designed to protect Eben's Confidential Information and those restrictive covenants, relating to Eben's Confidential Information, are not limited to any time period.

The September 2005 APA contains a provision that upon Crumpler's termination of employment, Eben has the exclusive rights to the Crumpler B Block and any commissions that Crumpler would be entitled to a royalty under the September 2005 APA.

Also in September of 2005, Crumpler signed an **EMPLOYMENT AGREEEMENT** with Eben.[11] That EA contained various restrictive covenants including the following:

"4.1 *Trade Secrets and Proprietary and Confidential Information*. Employee recognizes and acknowledges that Employee has acquired in the past, is presently acquiring, and will continue to acquire in the future during his employment with the Company, access to certain trade secrets and confidential and proprietary confidential information of the Company, including, but not limited to: (i) technical information, know-how, trade secrets, financial date, marketing and sales plans, customer and health care provider lists, Developments (as defined herein) and other commercial information relating to the Company's business and (ii) certain information that the Company has acquired or received from third parties in confidence (collectively, the "Confidential Information"). Employee acknowledges that the Confidential Information he obtains through his employment hereunder constitutes valuable, special, and unique property of the Company and that the Company would suffer great loss and damage if he should violate the covenants set forth in the Agreement. Employee acknowledges that such covenants ad conditions are reasonable and necessary for the protection of the Company's business.

4.2 *Nondisclosure of Trade Secrets, Proprietary and Confidential Information.* Employee agrees that, without the prior written approval of the Company, Employee shall not during the Term of Employment for a period of five (5) years, or following the cessation of the Term of Employment for any reason, disclose any of the Confidential Information of the Company to any person, firm, company, association, or other entity (except for authorized personnel of the Company) for any reason or purpose whatsoever….

4.4 *Solicitation of Business of Company*. Employee covenants and agrees that during the Term of Employment and for a period of three (3) years following termination of Employee's employment hereunder, Employee will not attempt to influence any of the Company's clients, not to do business with or not to continue to do business with the Company or its affiliates….Further Employee shall be restricted from contacting Company's employee's, clients, and/or any group which has been transferred or written during the term of Employee's employment with the Company, and for a period of three (3) years following termination of Employee's employment hereunder….Employee shall further be restricted from downloading, copying, or otherwise obtaining client, or perspective client, information, to include names, contact information, renewal dates, addresses, etc., from Company's database during the term of Employee's employment with the Company."

The EA contains a survival clause for these covenants at 4.6. It also contains a reformation savings clause at 4.7. It also contains an anti-contra proferentem clause at 5.11.

Finally, the EA contains a Remedies section that states:

"4.8 *Remedies*. In the event of breach or threatened breach by Employee of any provision of this Article IV, the Company shall be entitled to relief by temporary restraining order, temporary

---

[11] Exhibit B.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

**PAGE 7 OF 17**

injunction, permanent injunction, or otherwise in addition to other legal and equitable relief to which Company may be entitled, including any and all monetary damages that the Company may incur as a results of said breach, violation, or threatened breach or violation."

On or about July 31, 2006, Denise and Eben entered into an Agency Employment Agreement.[12]

The AEA states:

"Agency clients remain a part of the agency's book of business following the agent's voluntary or involuntary termination of employment with the agency and shall not be considered as a potential prospect or pursued as a client, directly or indirectly, by the agent or the agent's future employers for a period of three (3) years following the agent's termination of-employment with the agency. Specifically prohibited is a direct or indirect attempt to change the agent of record agreement between the client, agency and any insurer by the agent."

On or about November of 2019, Crumpler advised that he wished to terminate his employment with Eben and retire from the employee benefits business and take a new job captaining boats. Eben chose to elect its rights and purchase certain assets from Crumpler ("Assets").

Over the next several months, Eben and Crumpler negotiated this purchase, which ultimately culminated into a new agreement: the Asset Purchase Agreement (the "2019 APA"). Pursuant to the 2019 APA, Eben agreed to pay Crumpler $211,310 over a period of eighteen (18) months. Exhibit A[13].

In light of this payment, Crumpler agreed to the following restrictive covenants:

"1.4    **Piracy, Non-Solicitation, Confidentiality and Relief.**

    A.    **No Interference with Existing Customers.** The Parties agree that during the term hereof, the Seller shall not, directly or indirectly solicit, divert or take away, or attempt to solicit, divert or take away, the business listed in Exhibit A.

---

[12] Exhibit C.
[13] At this time, Eben has not been able to locate the signed copy of the 2019 APA. Regardless, the parties performed the agreement until Crumpler's breach.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

B. **No Interference with Customers written on or after the effective date of this Agreement.** The Parties agree that during the term hereof, the Seller shall not, directly or indirectly solicit, divert or take away, or attempt to solicit, divert or take away, any business of any client or customer of EbenConcepts that has been written as a new customer on or after the effective date of this Agreement.

C. **No Interference with Employees, Agents or Independent Contractors.** The Seller agrees that during the term hereof, the Seller will not, directly or indirectly, request or induce any current or former employee, agent or independent contractor of EbenConcepts to (i) terminate employment or contractual relations with EbenConcepts, (ii) accept employment or an independent contract with another business entity, or (iii) become engaged in any business, and specifically any business which is in competition with EbenConcepts.

D. **Trade Secrets; Confidential Information Acquired Prior to and During the Term of this Agreement.**
   i. General. **Seller recognizes and acknowledges that Seller will have and has had access to certain highly sensitive, special, unique information of Buyer that is confidential or proprietary. Seller hereby covenants and agrees not to use or disclose any Confidential Information (as defined herein) or trade secrets** except to authorized representatives of EbenConcepts, OrchestrateHR, or their respective subsidiaries or affiliates, except as required by any governmental or judicial authority; provided, however, that the foregoing restrictions shall not apply to items that, through no fault of either the Seller, have entered the public domain.
   ii. **Confidential Information.** For purposes of this Agreement, **"Confidential Information" means any data or information with respect to the business conducted by EbenConcepts on the Effective Date of this Agreement, other than trade secrets, that is material to EbenConcepts and not generally known by the public. To the extent consistent with the foregoing definition, Confidential Information includes without limitation: (A) reports, pricing, sales manuals and training manuals, selling and pricing procedures, and financing methods of EbenConcepts, together with any techniques utilized by EbenConcepts in designing, developing, manufacturing, testing or marketing its products or in performing services for clients, customers and accounts of EbenConcepts; (B) customer lists, the special requirements of particular customers, and the current and anticipated requirements of customers generally for the services of EbenConcepts; and (C) the business plans and financial statements, reports and projections of EbenConcepts.**
   iii. Ownership; Return. Seller acknowledges that all trade secrets and Confidential Information are and shall remain the sole, exclusive and

>       valuable property of EbenConcepts, and that Seller has and shall acquire no right, title or interest therein. Any and all printed, typed, written or other material which Seller may have or obtain with respect to trade secrets or Confidential Information (including without limitation all copyrights therein) shall be and remain the exclusive property of EbenConcepts, and any and all material (including any copies) shall, upon request of EbenConcepts, be promptly delivered by Seller to EbenConcepts.
>
>   E.   <u>Specific Performance.</u> **Seller agrees that a breach or violation of any of the covenants under this Agreement will result in immediate and irreparable harm to EbenConcepts in an amount which will be impossible to ascertain at the time of the breach or violation and that the award of monetary damages will not be adequate relief. Therefore, the failure on the part of the Seller to perform all of the covenants established by this subsection shall give rise to a right of EbenConcepts to obtain enforcement of this Agreement in a court of equity by a decree of specific performance or other injunctive relief.** This remedy, however, shall be cumulative and in addition to any other remedy EbenConcepts may have." [all emphasis added]

Crumpler's agreement to these restrictions and relief was critical to Eben and in large part was the basis for Eben agreeing to pay Crumpler for the purchase of the Assets. But for Crumpler's agreement to these restrictions and relief, Eben would not have agreed to the 2019 APA or any purchase from Crumpler.

The Closing Date for the 2019 APA was December 1, 2019. As agreed to in the 2019 APA, Eben made an initial payment of $70,436 to Crumpler. Crumpler assisted Eben in reaching out to the customers which comprised the Assets and advised them that Crumpler was retiring and that Eben would be assigning new account managers. Eben maintained a friendly and cordial relationship with Crumpler and made the contractually agreed upon payments. Unbeknownst to Eben, Crumpler appears to have been lying in wait for the receipt of his final payment to steal back the business that he had sold and been paid for.

On or about January 20, 2020, Denise's employment with Eben terminated.

Pursuant to the 2019 APA, the term relating to certain restrictive covenants and payment was to end in May of 2021. Due to certain Assets terminating their contracts with Eben, the full payment amount to which Crumpler was entitled to was received by Crumpler at the end of 2020. As a result of contacts with the customers who were part of the Assets purchased, Eben has learned that Crumpler is now convincing these customers to terminate, or not renew, their contracts with Eben and instead to enter into contracts with Crumpler. This is an outright violation of the restrictive covenants contained in the 2019 APA and Eben believes that Crumpler must be using Eben's Confidential Information in order to perpetrate this breach.

Sometime after January 12, 2021, M. Hughes Waren, Jr., one of Eben's Vice Presidents, received a notification from United Healthcare that the Big Blue Store, Billy Bill Grading Co., Morty Pride Meats, and McDonald Lumber Co. had all changed their Agent of Record. *See* Exhibit G. All of these companies were part of the Assets purchased in the 2019 APA.

Eben took immediate action to reach out to these clients once Eben received notice that many of them changed their Agent of Record to Crumpler. On January 25, 2021, Waren emailed Tim Clifton ("Clifton") at Big Blue Store about his change of Agent of Record to Crumpler. The contract with Big Blue Store is one of the Assets purchased. Clifton confirmed in writing that he was going to "stay with David" and not change the Agent of Record back to Eben. *See* Exhibit H.

On or about January 21, 2021, Waren spoke with Cheryl Macias ("Macias") at McDonald Lumber Co., another one of the Assets, regarding their change of Agent of Record to Crumpler. Macias confirmed the change and also stated that they were going to "stay with Crumpler" and not continue to do business with Eben.

Even though the letter is dated January 12, 2021, Eben received a letter from United Healthcare on or about January 28, 2021 confirming that Crumpler had been assigned as the Agent

of Record on the entities listed in the prior letter that Eben received advising Eben of the change of Agent of Record. *See* Exhibit I.

On February 10, 2021, Crumpler produced certain documents as a result of the State Court's order granting Plaintiff's request for expedited discovery. In the documents produced, there are text messages between Crumpler and Denise confirming Denise's involvement in Crumpler's efforts to take this business.[14] There are also documents confirming that Crumpler has taken business from Eben and is already receiving payment.

Crumpler's and Denise's taking of these Eben clients, and Assets, could have only been accomplished by their use of the Confidential Information that they received while employed by Eben[15]. Due to their employment with Eben and as confirmed in the August 2005 APA, the September 2005 APA, the EA, and the AEA, Defendants were given access to Eben's Confidential Information and trade secrets as those terms are defined in those agreements. Crumpler further confirmed receipt of Eben's Confidential Information and trade secrets in the EA and the 2019 APA. Eben believes that Crumpler and Denise have violated the restrictive covenants and agreements listed above.

---

[14] *See* Exhibit J.

[15] As this Court is more than likely aware, the mere fact that a defendant is in possession of trade secrets and is in position to use them is sufficient to warrant an injunction and an applicant does not have to show the defendant is actually using the information. *Fox v. Tropical Warehouses, Inc.* 121 S.W. 3d 853 at 860 (Tex. App.- Fort Worth 2003, no pet.); *Hill v. McLane Co.,* No. 03-10-00293-CV, 2011 WL 56061 at 5 (Tex. App. – Austin Jan. 5, 2011, no pet.)

## VI.
## BREACH OF CONTRACT

Eben incorporates the allegations in all preceding paragraphs as if fully set forth herein.

Eben incorporates all evidence attached to this pleading, specifically including the affidavits of Mouzon Bass III and M. Hughes Waren, Jr. attached hereto as Exhibits K and L. Eben further incorporate the Asset list attached as Exhibit M.

Eben contends that Crumpler has breached the 2019 APA as described above. In the alternative, Eben contends that Crumpler has violated the EA (specifically but not limited to the non-solicit type provisions and Confidential Information provisions), the August 2005 APA (specifically but not limited to the Confidential Information provisions), and the September 2005 APA (specifically but not limited to the Confidential Information provisions) as described above.

Eben contends that Denise breached the AEA as described above.

These breaches proximately caused injury to Eben, resulting in actual damages of at least $1,000,000 plus pre- and post-judgment interest, costs, and fees.

## VII.
## REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, Eben requests that this Court enter a temporary restraining order and preliminary injunction. The purpose of a temporary injunction is to preserve the *status quo*—the last *peaceable, non-contested status* that preceded the controversy. The issuance of the requested temporary restraining order and preliminary injunction will preserve the status quo in this matter. Furthermore, Crumpler contractually stipulated that Eben will suffer immediate irreparable harm if Crumpler violates the 2019 APA and continues to misappropriate the

Confidential Information of Eben. In multiple contracts, Crumpler also contractually agreed that injunctive is appropriate in relation to the claims brought herein. Additional harm will result if Crumpler and Denise are not restrained and therefore can continue their possible disclosure of additional Confidential Information belonging to Eben and continued violations of the restrictive covenants which they agreed. As a result of Defendant's actions, Eben will be irreparably harmed due to the misappropriation and disclosure of its Confidential Information and further violations of the contracts with the Defendants.

Eben has demonstrated through this pleading and the evidence attached hereto that it will likely succeed on the merits of the case and that it will suffer immediate and irreparable injury if the Defendants are not immediately enjoined from further wrongful acts. Crumpler already contractually stipulated that Eben's information is to be treated as confidential and that Eben will suffer irreparable harm as a result of Defendant's misuse of that information. Defendants can, and in all probability, will misuse or disclose Confidential Information belonging to Eben and breach the other restrictive covenants contained in the contracts they agreed to with Eben, causing an immediate and irreparable harm to Eben, because its damages will not be able to be ascertained with certainty nor fully recovered. Eben believes that Defendants' use of Eben's Confidential Information and continued breaches of their contracts is an immediate ongoing harm that Eben may not be able to recover from.

Eben respectfully requests that the Court enter an Order immediately restraining Defendants, and all persons or entities in active participation with Crumpler, from:

(i) Using or disclosing any of Plaintiff's Confidential Information[16];

---

[16] As that term is defined in the 2019 APA. Should the Court determine that the 2019 APA is not enforceable then use the definition agreed to in the EA.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

    (ii)      Accessing, deleting, or modifying any records[17] of Plaintiff;

    (iii)     Interfering with Plaintiff's existing contracts with its clients; and

    (iv)     Destroying any evidence of Defendants' misuse, misappropriation, or disclosure of Plaintiff's Confidential Information or other violations of the contracts between Defendants and Eben.

## VIII.
## CONDITIONS PRECEDENT

All conditions precedent to Eben's claim for relief have been performed, have occurred, or have been excused.

## IX.
## ATTORNEY'S FEES

As a result of Defendants' improper actions, Eben has been required to hire Stanton LLP. Pursuant to Civil Practice And Remedies Code § 38.001, and any other statute or legal basis, Eben seeks recovery of its attorney's fees from Defendants.

---

[17] "Records" is broadly defined to include, written, printed, recorded, electronic graphic matter, of any nature, however produced, reproduced, or stored including copies and drafts of such documents, and all handwritten notes in whatever form.

**PLAINTIFF'S COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION**

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that Defendants be cited to appear and answer, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants as follows:

(a) All damages, of any type, suffered by Plaintiff;

(b) All pre-judgment and post-judgment interest as allowed by law;

(c) Costs of court;

(d) Attorney's fees;

(e) A temporary restraining order, preliminary injunction and permanent injunction restraining Defendants from the actions described above; and

(f) Such other and further relief, at law or in equity, to which Plaintiff may show itself to be justly entitled to.

Dated: February 11, 2021

Respectfully submitted,

_____
Jose M. Portela
State Bar No. 90001241
jose@stantonllp.com
James M. Stanton
State Bar No. 24037542
jms@stantonllp.com
Jennifer Salim Richards
State Bar No. 24079262
jrichards@stantonllp.com

STANTON LLP
1717 Main Street
Suite 3800
Dallas, Texas 75201
Telephone: (972) 233-2300
Facsimile: (972) 692-6812

**ATTORNEYS FOR PLAINTIFF EBENCONCEPTS COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2021, a true and correct copy of the foregoing document was served according to the Federal Rules of Civil Procedure.

_____
Jose M. Portela